# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRACY FORWARD FOUNDATION, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) Civil Action No. 1:18-cv-00734 (APM) |
| DEPARTMENT OF JUSTICE, | ) <br> ) |
| Defendant. | ) <br> ) |

## DEFENDANT'S MOTION FOR STAY OF PROCEEDINGS

Defendant Department of Justice hereby moves the Court to stay proceedings in this litigation through January 13, 2019. This motion is supported by a statement of points and authorities and the Declaration of Vanessa Brinkmann. A proposed order is attached.

Pursuant to Local Rule 7(m), counsel of Defendant conferred with counsel for Plaintiff and Plaintiff opposes this motion. *See* ECF No. 11 at 2.

Dated: June 22, 2018          Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ Kevin M. Snell
KEVIN M. SNELL
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W., Room 6108
Washington, D.C. 20530
Tel.: (202) 305-0924
Fax: (202) 616-8460

E-mail:  Kevin.Snell@usdoj.gov

*Attorneys for Defendant*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRACY FORWARD FOUNDATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) Civil Action No. 1:18-cv-00734 (APM) |
| DEPARTMENT OF JUSTICE, | ) ) |
| Defendant. | ) ) ) |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION FOR STAY OF PROCEEDINGS**

**INTRODUCTION**

The Freedom of Information Act ("FOIA") includes a "safety valve" to provide an agency additional time to process a plaintiff's FOIA request while the court retains jurisdiction over the action. *See* 5 U.S.C. § 552(a)(6)(C); *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 610 (D.C. Cir. 1976). The D.C. Circuit recognized that "exceptional circumstances" justify such a stay when "an agency is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests." *Open Am.*, 547 F.2d at 616. That is precisely the situation at the Office of Information Policy ("OIP"), the Department of Justice component designated to receive and handle FOIA request at issue here.

OIP has recently been flooded with a record-breaking number of FOIA requests and lacks adequate resources to deal with this unprecedented volume. Moreover, OIP has diligently worked to readjust workflows, utilize technology, improve processes, and find efficiencies in processing both Plaintiff's FOIA request specifically and its overall caseload generally. Moreover, despite the unprecedented nature of the increase in incoming requests and FOIA litigation, OIP is making "reasonable progress" in reducing its backlog of pending requests, *see* 5 U.S.C. § 552(a)(6)(C)(ii), as evidenced by the fact that it has repeatedly set new records for processing FOIA requests to completion each year. As such, Defendant respectfully requests a modest stay of this action through January 13, 2019, to allow OIP sufficient time to finish its search, preliminarily review any potentially responsive agency records it collects that are subject to the FOIA, and confer with Plaintiff over a processing schedule.

## BACKGROUND

On January 30, 2018, Plaintiff submitted to OIP its FOIA request seeking "all records that have been provided to the Office of Legal Policy by individuals (or on the behalf of those individuals) who have been nominated to judgeships on the federal courts of appeals." Compl. ¶ 9, ECF No. 1; *see also* Brinkmann Decl. Ex. A.  OIP's FOIAOnline system immediately informed Plaintiff of the FOIA request's tracking number.  Brinkmann Decl. ¶ 7.  Then, on February 28, 2018, OIP sent a letter informing Plaintiff that because the request required "a search in and/or consultation with another Office," "unusual circumstances" existed that warranted an extension of time to respond beyond the ten additional days provided by statute. *Id.* Ex. B (citing 5 U.S.C. § 552(a)(6)(B)(i)-(iii)).  The letter went on to explain that the request was placed in the "complex track" for processing purposes, but that "[i]n an effort to speed up our process," Plaintiff "may wish to narrow the scope of [its] request to limit the number of potentially responsive records so that it can be placed in a different processing track."  *Id.*

About a month later, Plaintiff filed this lawsuit.  *See* Compl., ECF No. 1.  The parties then conferred and Plaintiff agreed to narrow its FOIA request such that it seeks "all records that have been provided to the Office of Legal Policy by individuals (or on the behalf of those individuals) who have been nominated to judgeships on U.S. Court of Appeals for the Fifth Circuit and the U.S. Court of Appeals for the D.C. Circuit."  Brinkmann Decl. ¶ 43.  The parties were unable to reach agreement as to the time needed to search for any such records.  Although Defendant diligently responded to Plaintiff's FOIA request, an unprecedented surge in requests has caused backlogs at each stage of OIP's search process, and approximately 227 OIP search requests sit ahead of Plaintiff's.  *Id.* ¶¶ 18, 41-44.  Moreover, OIP is currently engaged in eighty ongoing FOIA litigation matters, approximately thirty of which still require records searches to

be completed. *Id.* ¶ 15. Thus, Defendant now moves for a stay of proceedings through January 13, 2019, to allow it to finish its search, preliminarily review any potentially responsive agency records that it collects that are subject to FOIA, and confer with Plaintiff over a processing schedule.

## LEGAL STANDARD

Upon receiving a FOIA request, an agency must generally "determine within 20 days (except for Saturdays, Sundays, and legal public holidays) . . . whether to comply with such request and shall immediately notify the [requestor] . . . of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency." 5 U.S.C. § 552(a)(6)(A)(i). The agency generally must also make a determination regarding any appeal within twenty working days. *See id.* § 552(a)(6)(A)(ii). But in unusual circumstances, these time limits may be extended. *Id.* § 552(a)(6)(B)(i). If the agency falls short of meeting the statutory time limits, the requestor "shall be deemed to have exhausted his administrative remedies" and may file suit in federal district court. *See* 5 U.S.C. § 552(a)(6)(C)(i).

The Court, while retaining jurisdiction over the action, may "allow the agency additional time to complete its review of the records" upon a showing that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." *Id.* This provision "was put in as a safety valve" in recognition that FOIA's time limits might prove unworkable. *Open Am.*, 547 F.2d at 610.

As part of the Electronic Freedom of Information Act Amendments of 1996, Congress amended 5 U.S.C. § 552(a)(6)(C)(i) by adding the following subsection:

> (ii) For purposes of [5 U.S.C. § 552(a)(6)(C)], the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

3

5 U.S.C. § 552(a)(6)(C)(ii).[1]

In *Open America*, the D.C. Circuit held that an agency is entitled to additional time to process a FOIA request under § 552(a)(6)(C) when it "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests." 547 F.2d at 616 (quoting 5 U.S.C. § 552(a)(6)(C));[2] *see also Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 64 (D.C. Cir. 1990) ("Frequently, if the agency is working diligently, but exceptional circumstances have prevented it from responding on time, the court will refrain from ruling on the request itself and allow the agency to complete its determination."); *Appleton v. FDA*, 254 F. Supp. 2d 6, 9 (D.D.C. 2003) ("Courts in this circuit have interpreted this 'exceptional circumstances' provision as excusing any delays encountered in responding to a request as long as the agencies are making good-faith efforts and exercising due diligence in processing requests on a first-in, first-out basis."). "It also has been recognized, based on . . . legislative history, that other circumstances in addition to FOIA request backlogs may be a basis for finding exceptional circumstances, including 'resources being devoted to the declassification of classified material of public interest, and the number of requests for records by courts or

---

[1] The 1996 Amendments to the FOIA upheld the decision in *Open America*, affirmed the proposition that stays should be granted to agencies faced with a large volume of FOIA requests, and clarified that even a "predictable agency workload of requests" constituted "exceptional circumstances" when an agency could demonstrate that it was making progress in reducing its backlog. *See* H.R. Rep. No. 104-795, at 24, reprinted in 1996 U.S.C.C.A.N. 3448, 3467 (noting that the FOIA Amendments were "consistent" with the holding in *Open America*).

[2] In *Open America*, the Court found exceptional circumstances where the FBI had a backlog of "only" 5,137 requests. *See* 547 F.2d at 609, 613.

administrative tribunals.'" *Ctr. for Pub. Integrity v. U.S. Dep't of State*, No. 05-2313(JDB), 2006 WL 1073066, at *2 (D.D.C. Apr. 24, 2006) (citation omitted).

Courts have frequently issued orders extending the time to respond to FOIA requests, including orders granting stays of several years in length or otherwise permitting agencies several years to process documents under exceptional circumstances. *See, e.g.*, *Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d 13, 16 (D.D.C. 2004) (FBI showed need for stay of two years); *Williams v. FBI*, 2000 WL 1763680, No. CIV.A. 99-3378 AK, at *3 (D.D.C. Nov. 30, 2000) (stay of approximately one and a half years); *Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*, 102 F. Supp. 2d 6, 9 & n.1 (D.D.C. 2000) ("By order dated August 25, 1998, this court granted the FBI an *Open America* stay, affording the FBI until June 8, 2000 to respond to JWF's request."); *Nat'l Sec. Archive v. U.S. SEC*, 770 F. Supp. 2d 6, 9 (D.D.C. 2011) (granting one-year stay); *Elec. Frontier Found. v. U.S. Dep't of Justice*, 517 F. Supp. 2d 111, 121 (D.D.C. 2007) (same); *Fox v. U.S. Dep't of Justice*, 1994 WL 923072, No. CV-94-4622 JMI (JRX), at *1-2 (C.D. Cal. Dec. 14, 1994) (FBI showed need for stay of five years); *see also Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 2005 WL 6793645, No. CIV. A. 02-0063 (CKK), at *6 (D.D.C. Aug. 31, 2005).

## ARGUMENT

Defendant moves to stay proceedings through January 13, 2019, to allow Plaintiff's request to work its way to the front of the queue so that Defendant may finish its search, preliminarily review any potentially responsive agency records it collected that are subject to FOIA, and confer with Plaintiff over a processing schedule. As shown by the Brinkmann Declaration—which is "accorded a presumption of good faith [and] cannot be rebutted by purely speculative claims," *Elec. Frontier Found.*, 517 F. Supp. 2d at 117—and explained herein, OIP

5

is operating under exceptional circumstances and has handled Plaintiff's FOIA request and its backlog with due diligence. As is "[f]requently" done in such circumstances, *Oglesby*, 920 F.2d at 64, the Court should enter a stay here.

**I. OIP is Operating Under Exceptional Circumstances**

    **A. OIP is Flooded with a Number of FOIA Requests Vastly in Excess of that Anticipated by Congress**

Several factors demonstrate that exceptional circumstances exist here. OIP has received a dramatic surge in FOIA requests that has only increased at an unprecedented rate over the past two years. Brinkmann Decl. ¶ 10. Specifically, OIP received 2,818 FOIA requests in FY 2017, the most requests it had ever received in a fiscal year and 56.3% more FOIA requests than a year earlier, when it received 1,803 requests, which at that time was the most requests OIP had received in a year. *Id.* ¶ 11. This year, OIP is on pace once again to exceed its all-time high for FOIA requests received, as it is on track to receive 3,396 FOIA requests, an 88.4% increase from FY 2016 and nearly double the number of requests received less than three years ago in FY 2015. *Id.* Indeed, from the beginning of March to the end of May of this year, OIP received 1,159 new FOIA requests, more than it received during the whole of FY 2009. *Id.* Such a deluge of requests shows the exceptional circumstances present here. *See Daily Caller v. U.S. Dep't of State*, 152 F. Supp.3d 1, 12 (D.D.C. 2015) (finding "dramatic one-year increase" in FOIA requests of nearly 20% "certainly removes the present increase from the ambit of a 'predictable agency workload'"); *see also Energy Future Coal. v. Office of Mgmt. & Budget*, 200 F. Supp. 3d 154, 161 (D.D.C. 2016) (holding that "OMB is burdened with an 'unanticipated number of FOIA requests'" for its two FOIA employees when it was "in litigation in two other FOIA cases and is in the process of reviewing approximately 68 additional FOIA requests," 27

6

of which "concern complex matters and/or comprise significant numbers of documents" that predate plaintiff's FOIA request).

Aside from the sheer number of FOIA requests that has flooded OIP recently, the office has also seen a spike in the number of complicated requests that require complex, voluminous searches of different electronic records such as emails. Brinkmann Decl. ¶ 10. Such searches often implicate dozens of custodians and vast amounts of data, and thus can be resource intensive. An electronic search takes, on average, 1.5 person-hours per custodian, and OIP has already placed thirty-two search requests in the search queue this month with an average of twenty custodians per request. That translates to an average of 30 working hours for one search team member to finish the search for each request. *Id.* ¶ 34-35. And if the approximately 227 search requests ahead of Plaintiff's also have an average of twenty custodians, the 1.5 hours per custodian average would require the search team to expend 6,810 person-hours (or 170.25 working weeks) before Plaintiff's FOIA request would reach the front of the search queue as a matter of course. *Id.* ¶ 44. The complexity of the requests flooding OIP thus further underscores the exceptional circumstances present here. *See Nat'l Sec. Archive*, 770 F. Supp. 2d at 9 ("a deluge of complicated requests [], when viewed together, support a determination of exceptional circumstances").

Unusually heavy litigation demands arising from this deluge of FOIA requests further reflects the exceptional circumstances present here. *See Elec. Frontier Found.*, 517 F. Supp. 2d at 117 ("[T]he number of requests for records by courts or administrative tribunals, are relevant to the courts' determination as to whether exceptional circumstances exist."); *CareToLive v. US FDA*, 2008 WL 2201973, No. 2:08-CV-005, at *6 (S.D. Ohio May 22, 2008) (FDA's "enormous litigation demands" contributed to finding of exceptional circumstances (quoting *Bower v. FDA*,

No. 03-224-B-W, 2004 U.S. Dist. LEXIS 18369, at *5 (D. Me. Aug. 30, 2004))); *Edmonds v. FBI*, No. CIV. A. 02-1294 (ESH), 2002 WL 32539613, at *2 (D.D.C. Dec. 3, 2002) (FOIA staff's time spent on appeals, litigation and "large projects" contributed to finding of exceptional circumstances). OIP is currently involved in eighty ongoing FOIA litigation matters, a 63.3% increase from March 2017, when it was engaged in forty-nine, and a staggering 175.9% increase from the twenty-nine litigation matters it was involved in March 21, 2016. Brinkmann Decl. ¶ 15. And approximately thirty of these litigation matters still require records searches and/or production schedules to be completed. *Id.*

Many of these cases involve document production schedules, and the ongoing FOIA litigation matters have dramatically reduced OIP's ability to efficiently respond to FOIA requests that are not the subject of litigation. This is because OIP has continually needed to shift litigation searches to the front of OIP's first-in, first-out search queue, ahead of those who chose not to file a lawsuit—many of which implicate topics of significant public interest—and are waiting their turn. *Id.* ¶ 25. Indeed, even though requests subject to litigation make up only about 5% of OIP's FOIA backlog, *nearly half* of the searches completed by OIP during the first part of FY 2018 were for requests subject to litigation, and the non-litigation requests it did complete were for relatively small and/or narrow searches. *Id.* ¶ 27. This reprioritization is not only inefficient in addressing requests not subject to litigation, it is counterproductive, as it encourages requesters to file litigation to skip ahead of those in the search queue, and pushes all other non-litigation requesters (including those granted expedited processing or who have worked with OIP to narrow their request) behind litigation requests regardless of the length of their wait. *Id.* ¶ 25. Prioritizing litigation in effect overrode OIP's multitrack, first-in, first out processing system, causing inefficiencies and a disproportionate and inequitable effect on non-

8

litigation requests. *Id.* ¶¶ 25-27. Thus, OIP determined in March 2018 that it could no longer prioritize litigation requests, particularly in the electronic search queue, based purely on the requester filing a lawsuit. *Id.* ¶ 26. And since then, two-thirds of the electronic record searches were non-litigation requests, demonstrating marked improvement in productivity for completing searches in the approximately 95% of pending requests that are not subject to litigation. *Id.* ¶ 28.

### B. OIP Has Inadequate Resources to Handle the Deluge of FOIA Requests

After receiving a FOIA request, OIP determines which office(s) will needed to be searched, as well as the appropriate search method to be used. Brinkmann Decl. ¶ 29. When the FOIA request implicates records maintained by another office, OIP typically initiates the records search by notifying the office of the FOIA request and informing personnel that OIP will conduct an electronic search of records maintained by relevant staff members. *Id.* ¶ 31. This notification also starts a dialogue through which the office may inform OIP's search by identifying potential custodians, the types of records systems that may need to be searched, and other relevant guidance for OIP's search parameters. *Id.* OIP then creates a "data request form" that identifies the relevant custodians, as well as the search terms and time frame. *Id.* ¶ 32. After an internal review ensures that form is appropriately tailored to the FOIA request and records, OIP submits it to the Department of Justice, Justice Management Division's ("JMD") Office of the Chief Information Officer ("OCIO"), the office with a sophisticated e-discovery platform that conducts searches of senior leadership email accounts and electronic files for OIP. *Id.* ¶¶ 30, 32.

JMD OCIO staff then take a number of steps to complete the search. *Id.* ¶ 33. They first research the e-mail and electronic accounts of each custodian identified in the data request form to ensure that all accounts and relevant data are retrieved for the search. *Id.* & n.14. Then, each custodian's account data is located, indexed, and collected. *Id.* ¶ 33. Once inputted into an e-

discovery system, the staff runs OIP's search parameters across the entire data collection, and any relevant items such as emails are extracted and put into a new data-set containing only information responsive to the search parameters. *Id.* OCIO search team members conduct quality assurance protocols to make sure relevant data is retrieved. *Id.* Once OCIO provides the search results, OIP then undertakes an initial review of the collection. *Id.* ¶¶ 33, 39. While the time needed to complete the search varies depending on a number of factors, the primary factor is the number of custodians. OCIO's search team is generally able to complete the entire search process at an average rate of 1.5 hours per search custodian. *Id.*

The OCIO search team consists of a total of five people, and this staff provides e-discovery and FOIA search support for many other Department of Justice functions, including other components' FOIA searches, litigation holds, record searches for Congressional inquiries, and Inspector General requests. *Id.* ¶ 36. OIP's unprecedented deluge in FOIA requests has had a direct and measurable impact on the OCIO's workload, as OIP's FOIA searches on behalf of the Department's senior leadership makes up the largest share of the team's work. *Id.* ¶ 37. For example, OCIO's team completed 37 searches in FY 2014 but 185 in FY 2017. *Id.* And while the number of records custodians implicated in FY 2014 amounted to only 218, that number has climbed nearly ten-fold to 2,065 last fiscal year. *Id.*

JMD/OCIO is doing everything possible to increase staffing within existing budgetary constraints, and has responded to this spike in the number and size of search requests by reallocating staff on a part-time basis from other JMD sections and, recently, by adding another contractor to the search team. *Id.* ¶ 38. It is also actively working to backfill a position that had remained unfilled due to budgetary constraints and hiring freezes, and has sought to improve efficiencies by streamlining its search processes over the past several years. *Id.* For example, it

now actively maintains preemptively-indexed data for certain employees who are frequent subjects of FOIA requests, which substantially reduces the time needed to provide search results from those custodians. *Id.* These efforts have yielded positive results, as the OCIO has completed, on average, five times the number of cases per month this year than it did in FY 2014. *Id.*

Yet still, in light of the unprecedented surge in complex FOIA requests and litigation, *id.* ¶ 24, the agency's "resources are inadequate to process the requests within the time limits set forth in the statute[.]" *Williams*, 2000 WL 1763680, at *2; *see also CareToLive*, 2008 WL 2201973, at *4 ("[I]n FOIA cases, courts routinely recognize that other circumstances, including lack of resources, should be considered."). As explained *supra*, this month alone OIP has placed thirty-two search requests in the queue with an average of twenty custodians per request, with each search request thus averaging 30 working hours. *Id.* ¶ 34-35. And using that twenty-custodian average for the approximately 227 search requests ahead of Plaintiff's in the search queue would mean that the search team would expend 6,810 person-hours (or 170.25 working weeks) before Plaintiff's FOIA request would reach the front of the queue. *Id.* ¶ 44. Even if all five OCIO search team members committed 100% of their time to OIP's FOIA searches (and ignored their other responsibilities), that projection shows that it would take them 34.05 weeks, or approximately eight and a half months, to complete. *Id.*

In sum, OIP faces exceptional circumstances in reducing its FOIA backlog, thus warranting a stay of proceedings. A stay through January 13, 2019 fits comfortably within decisions of other courts in this district that have granted stays up to several years in duration when called for by the circumstances. *See, e.g.*, *Jimenez v. FBI*, 938 F. Supp. 21, 31 (D.D.C. 1996) (nearly four-year stay granted to process 700 pages); *Haddon v. Freeh*, 31 F. Supp. 2d 16,

11

19 (D.D.C. 1998) (noting that court had granted stay until January 1998 on request submitted to FBI nearly four years before); *Guzzino v. FBI*, No. CIV.A. 95-1780 (SS), 1997 WL 22886, at *2 (D.D.C. Jan. 10, 1997) (granting stay of more than four years because "[t]he FBI has shown that even though it is exercising due diligence, because of inadequate resources it is unable to respond to plaintiff's request within the statutory . . . limit").

## II. OIP is Exercising Due Diligence in Responding to Plaintiff's FOIA Request

Despite the exceptional circumstances involved in this case, OIP is exercising due diligence in responding to Plaintiff's FOIA request. Whether an agency "has been exercising 'due diligence' requires a short look at its present procedure for processing FOIA requests," *Open Am.*, 547 F.2d at 612, particularly whether the agency processes the requests on a first-in, first-out basis, *see id.* at 616 ("The good faith effort and due diligence of the agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis . . . is compliance with the Act."); *Lisee v. CIA*, 741 F. Supp. 988, 989 (D.D.C. 1990) (holding that agencies' processing of FOIA requests on a first-in, first-out basis showed "due diligence" warranting a stay).

OIP immediately assigned Plaintiff's FOIA request a tracking number upon receipt on January 30, 2018, Brinkmann Decl. ¶ 7, and then sent Plaintiff a letter on February 28, 2018, explaining that because the request required "a search in and/or consultation with another Office," "unusual circumstances" existed that warranted an extension of time to respond beyond the ten additional days provided by statute, and that the request would be placed in placed in the "complex track" for processing purposes, Brinkmann Decl. Ex. B. The letter disclosed that the time needed to complete processing the request depends on a variety of factors, including the complexity of the search, the volume and complexity of any material located, and the order of

receipt of the request. *Id.* And although OIP informed Plaintiff that it "may wish to narrow the scope of [its] request to limit the number of potentially responsive records so that it can be placed in a different processing track" to help "speed up our process," *id.*, Plaintiff declined to do so before filing its lawsuit.

Also on February 28, 2018, OIP sent a notification to OLP, advising that office of the request and initiating a search in that office. *Id.* ¶ 41. OLP then promptly and thoroughly canvassed its documents and identified custodians and search methods, which it discussed in detail with OIP. *Id.* This resulted in a comprehensive search plan that is tailored to OLP's practices and the information sought by Plaintiff's request. *Id.* OIP has placed the data request form for Plaintiff's FOIA request in the queue where it is positioned behind approximately 227 other OIP search requests pending OCIO searches, which in the ordinary course are completed on a first-in, first-out basis. *Id.* ¶ 44 & n.18. And apart from the electronic search, OIP anticipates being able to finish a hand search for any hard-copy material before the end of the requested stay. *Id.* ¶ 42 n.17.

**III. OIP is Making Reasonable Progress in Reducing its Backlog**

Even if the current volume of FOIA requests constitutes a predictable workload (and as explained above, it does not), OIP is nevertheless making reasonable progress in reducing its backlog of pending requests, and thus a finding of exceptional circumstances is warranted. *See* 5 U.S.C. § 552(a)(6)(C)(ii) ("the term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests").

"'Reasonable progress' is affected, of course, by the number of requests for information and the number of appeals, the agency's serious attention to its FOIA obligations, and the budget

allocated by Congress. When agencies are making good-faith efforts and exercising due diligence in processing requests and appeals on a first-in, first-out basis, courts generally find that exceptional circumstances excuse any delays." *Ctr. For Biological Diversity v. Gutierrez*, 451 F. Supp. 2d 57, 70 (D.D.C. 2006). "To establish reasonable progress, courts generally have considered a range of factors, including requests for additional funding, modernizing practices and equipment, and initiatives tied directly to backlog reduction." *CareToLive*, 2008 WL 2201973, at *5. As explained *supra*, OCIO has increased its staffing and streamlined its search processes, which has allowed it to make significant strides in its productivity. OIP similarly has taken a number of active steps to improve efficiencies in the OIP staff's FOIA processing system structure, staffing, and search methods, and to address the FOIA backlog. Brinkmann Decl. ¶ 19. Such efforts have included reorganizing OIP's staff and processing structure, and increasing staffing resources. *Id.* ¶¶ 20-23.

In FY 2016, after comprehensive review, OIP reorganized its staff and processing structure, which led to the development of a dedicated staff focused on tasks requiring speed such as intake of new requests, search initiation, requester negotiations, and "simple track" requests. *Id.* ¶ 21. As a direct result of this reorganization, OIP's average simple track processing improved, and by FY 2017 fell to an average of just over 22 days (averaged across the simple track processing time averages for all leadership offices for which OIP processes FOIA requests). *Id.* Moreover, the staff reorganization at OIP allowed staff the time needed to focus on complex requests, which may not have been possible had there been competing demands that required faster turnarounds. *Id.* ¶ 22. OIP was also able to increase its processing rates, as evidenced by the fact that it has repeatedly set records for the number of FOIA requests processed to completion in a fiscal year, *id.* ¶12, and reduce the age of its older pending FOIA

requests, such that at the start of FY 2018, OIP's oldest pending requests was seven months "younger" than the oldest request at the beginning of FY 2017.  *Id.* ¶ 22 & n.13.

And even though budgetary constraints have prevented OIP from substantially increasing staffing levels, or even to backfill all existing open positions, OIP has nevertheless sought to increase staffing by reallocating resources within the office to address the surge in FOIA requests.  *Id.* ¶ 23.  OIP personnel from other teams such as Appeals and Compliance assist on an *ad hoc* basis, and OIP has been able to hire a limited number of experienced attorneys—in addition to procuring one senior reviewing attorney and planning to add another later this year—to help address the increased volume and complexity of the FOIA requests it receives, as well as the significant increase in litigation stemming from those requests.  *Id.* ¶ 23.

OIP's efforts have allowed it to make reasonable progress toward reducing its FOIA backlog.  Indeed, OIP has consistently set new records for the number of requests processed to completion.  *Id.* ¶ 12.  Last fiscal year, OIP processed 2,113 FOIA requests, a 67% increase in the number of FOIA requests processed since FY 2014, when it processed 1,265 FOIA requests.  *Id.*  And OIP is on track to once again set a new record for the number of FOIA requests processed this year, as it is on pace to process 2,628 requests, *more than doubling* OIP's processing output in just four years.  *Id.*  These efforts—and the increase in processing that has flowed from them—show exceptional circumstances under 5 U.S.C. § 552(a)(6)(C)(ii).

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and stay this action through January 13, 2019, to allow OIP to finish its search, preliminarily review any potentially responsive agency records that are subject to the FOIA that it collects, and confer with Plaintiff over a processing schedule.

15

Dated: June 22, 2018         Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ Kevin M. Snell
KEVIN M. SNELL
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W., Room 6108
Washington, D.C.  20530
Tel.: (202) 305-0924
Fax: (202) 616-8460
E-mail:  Kevin.Snell@usdoj.gov

*Attorneys for Defendant*