**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| DEMOCRACY FORWARD FOUNDATION | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:18-cv-00734 (APM) |
| DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) | |

_____)

## DECLARATION OF VANESSA R. BRINKMANN

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1. I am Senior Counsel in the Office of Information Policy (OIP), United States Department of Justice (DOJ). In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests processed by the Initial Request Staff (IR Staff) of OIP.[1] The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from six senior leadership offices of the Department of Justice, specifically the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (PAO). The IR Staff determines whether records responsive to requests exist and, if so, whether they can be released in accordance with the FOIA. In processing such requests, the IR Staff consults with

---

[1] OIP consists of several teams, including the IR Staff, Appeals Staff, and Compliance Staff. The IR Staff is responsible for processing FOIA requests, including requests subject to litigation. In the context of this declaration, references to "OIP" are intended to refer to the IR Staff, unless otherwise indicated.

personnel in the senior leadership offices and, when appropriate, with other components within the Department of Justice, as well as with other Executive Branch agencies.

2.   I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties.

3.   The purpose of this declaration is to support Defendant's motion for a stay pursuant to 5 U.S.C. § 552(a)(6)(C)(i)-(iii) (2012 & Supp. IV 2016), and consistent with *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), to allow OIP time to reach Plaintiff's request in our FOIA processing queue, complete our search for any records responsive to Plaintiff's FOIA request, preliminarily review any potentially responsive agency records that are subject to the FOIA, and confer with Plaintiff regarding a processing schedule.  Specifically, OIP requests that the Court enter a stay through January 13, 2019.

4.   The FOIA provides that when, as in this case, a requester files suit in federal district court on the basis of "constructive exhaustion" of administrative remedies (i.e., when an agency is unable to respond to a FOIA request within statutory time limits): "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records."  5 U.S.C. § 552(a)(6)(C)(i).  A stay is warranted when an agency "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that is it 'is exercising due diligence' in processing the requests." *See Open Am.*, 547 F.2d at 616.  Exceptional circumstances do not include a delay that results from a predictable workload of requests unless

the agency demonstrates reasonable progress in reducing its backlog of requests.  *See id.*
§ 552(a)(6)(C)(ii).

5.   This declaration provides the basis for OIP's conclusion that "exceptional
circumstances exist" in light of a substantial and unpredictable surge in incoming FOIA requests;
the increasingly complex nature of the records searches, coupled with increasing numbers of
records custodians, required in response to these requests; the overwhelming strain on OIP's
resources as a result of this spike in requests; and that OIP is "exercising due diligence" in
responding to a continually-increasing deluge of complex requests, including Plaintiff's.  For the
reasons set forth below, OIP requires six months to complete the records searches in response to
Plaintiff's request, and an additional month and a half to complete the preliminary review of any
material retrieved and to confer with Plaintiff regarding a processing schedule.[2]

**Plaintiff's FOIA Request**

6.   By letter dated January 30, 2018, Plaintiff submitted a FOIA request to OIP seeking:
"all records that have been provided to the [OLP] by individuals (or on behalf of those
individuals) who have been nominated to judgeships on the federal courts of appeals."  Plaintiff
indicated that the temporal scope of the request was from January 20, 2017, until the day the
search was run.  Plaintiff requested a waiver of all fees associated with its request. A copy of
Plaintiff's FOIA request, dated January 30, 2018, is attached hereto as Exhibit A.

7.   On the same date that Plaintiff submitted its request to OIP, OIP's FOIAOnline
system sent an automated e-mail to Plaintiff confirming receipt of the FOIA request and
assigning it tracking number DOJ-2018-002362.

---

[2] OIP requests a stay of 7.5 months from the date of the parties' Joint Status Report filed May 23,
2018, ECF No. 11.

8.     On February 28, 2018, OIP acknowledged receipt of Plaintiff's FOIA request on behalf of OLP and confirmed its OIP tracking number DOJ-2018-002362 (OLP).  In this acknowledgement letter, OIP informed Plaintiff that Plaintiff's FOIA request would require a search in and/or consultation with another Office and noted that the request therefore fell within unusual circumstances.  Accordingly, OIP informed Plaintiff that the request had been placed in the "complex" processing track and that OIP would not be able to respond within the twenty-working-day time limit, or within the ten additional days provided by the statute.  Finally, OIP deferred making a determination on Plaintiff's request for a fee waiver.  A copy of OIP's acknowledgement letter, dated February 28, 2018, is attached hereto as Exhibit B.

9.     On April 2, 2018, Plaintiff filed suit in connection with FOIA request DOJ-2018-002362 (OLP).  *See* Compl., ECF No. 1.

### Spike in OIP's FOIA Obligations

10.     OIP's FOIA caseload has dramatically spiked over the past two years. While the volume of FOIA requests submitted to OIP has been steadily and significantly increasing since Fiscal Year (FY) 2008,[3] OIP encountered an especially steep and unanticipated spike in FOIA requests beginning in mid-FY 2016.[4]  This surge in requests has not abated, and has continued to increase at an unprecedented rate, with the current Fiscal Year (FY 2018) on track to vastly outpace OIP's historical averages.  Aside from the sheer volume of incoming requests, OIP has also experienced a deluge of complicated requests requiring complex, voluminous searches of a

---

[3] The fiscal year is the accounting period for the federal government which begins on October 1 and ends on September 30.  The fiscal year is defined by the calendar year in which it ends (e.g. Fiscal Year 2017 began on October 1, 2016 and ended on September 30, 2017).

[4] In the first half of FY 2016, OIP received 751 requests (an annual pace of 1,502).  In the second half of FY 2016, OIP received 1,061 requests (an annual pace of 2,122), a 41.3% increase over the first half of the year.

variety of electronic records, most notably e-mails, often implicating dozens of records custodians and vast amounts of electronic data.  At the same time, the number of lawsuits filed in connection with requests being handled by OIP has exponentially increased – nearly tripling in the past two years.  This combination of increased volume of requests and custodians, request complexity, and litigation has exhausted OIP's resources.  OIP has responded to this rush of requests by employing a variety of improvements and adaptations that have resulted in record numbers of requests being processed to completion each year.  However, OIP's backlog of requests continues to grow and it is therefore essential that OIP continues to identify new efficiencies in our FOIA processing methods to ensure that the management of our FOIA caseload is as dynamic as the breadth and volume of the FOIA requests being received by OIP. For this reason, and as discussed in more detail below, OIP recently assessed the impact of litigation on FOIA processing timelines and concluded that we can no longer prioritize searches for requests simply because litigation has been filed, due to the disproportionate and inefficient effect such prioritization has on our ability to process all other requests.

11. In FY 2016, OIP received 1,803 FOIA requests, which at that time was the most requests OIP had ever received in a fiscal year.  In FY 2017, OIP set a new record for requests received in a fiscal year when it received 2,818 FOIA requests, representing a 56.3% increase from the prior year.  Further, as of May 31, 2018, OIP has received 2,264 requests in FY 2018, putting OIP on pace to receive 3,396 FOIA requests through the end of the Fiscal Year.  This would represent a 20.5% increase from FY 2017, an 88.4% increase from FY 2016, and is nearly double the number of requests received less than three years ago, in FY 2015 (1,762).  As such, this year OIP is expected again to exceed its all-time high for FOIA requests received in a fiscal year.  Notably, between March 1, 2018 and May 31, 2018 alone, OIP received 1,159 new FOIA

requests, which is fifty-six more than the Office received in the whole of FY 2009.  Although

this spike began during the 2016 presidential election cycle and subsequent presidential

transition period, the extremity of this spike is unlike anything OIP has experienced during prior

presidential transitions – and thus was completely unanticipated.[5]

12. Since FY 2014, OIP has been successful in processing more FOIA requests each year.

In FY 2014 and 2015, OIP processed 1,265 and 1,528 FOIA requests, respectively.  In FY 2016,

OIP processed 2,054 FOIA requests, the most requests it has ever processed in a fiscal year.  In

FY 2017, OIP eclipsed that record when it processed 2,113 FOIA requests.  Further, as of May

31, 2018, OIP has processed 1,752 FOIA requests in FY 2018, and is on pace to process 2,628

by the end of FY 2018, which is more than double the number of FOIA requests processed in FY

2014 (1,265).

13. The below graph illustrates the upward trend in incoming requests received and

processed by OIP's IR Staff, and clearly shows the notable spike in requests which began during

FY 2016, and continues today (FY 2018 figures as-projected):

---

[5] For example, during the Clinton/Bush II transition, OIP's incoming requests increased only
8.7% (from Y965 in FY 2000 to 1,049 in FY 2001).  During the Bush/Obama transition, OIP
experienced a 22% increase (from 904 in FY 2008 to 1,103 in FY 2009).  Thus, while some
increase was anticipated, the 56.3% increase during the Obama/Trump transition period – over
2.5x that of the prior transition – certainly was not.



14. As a result of the substantial increase in incoming FOIA requests, despite record numbers of requests processed, OIP's backlog[6] has also increased. At the end of FY 2016, OIP's backlog contained 578 FOIA requests. At the end of FY 2017, OIP's backlog expanded to 1,209 FOIA requests. Further, as of May 22, 2018, there were 1,712 FOIA requests in OIP's backlog.

15. Additionally, as of June 22, 2018, OIP is currently engaged in eighty ongoing FOIA litigation matters,[7] approximately thirty of which still require records searches and/or document production schedules to be completed. This represents a substantial 63.3% increase from the forty-nine litigation matters in which OIP was involved as of March 20, 2017, and an even more staggering 175.9% increase from the twenty-nine litigation matters in which OIP was involved as of March 21, 2016.

16. The below table summarizes the data demonstrating the increases in OIP's received, processed, and backlogged requests, going back to FY 2008, and in litigation since March 2016:

---

[6] Backlog is defined as the number of pending FOIA requests that have not been responded to within the statutory time limit.

[7] These eighty cases implicate a total of 113 individual FOIA requests, across the various senior leadership offices for which OIP handles requests.

| | Received | Processed | Backlog | Litigation[8] |
|---|---|---|---|---|
| FY08 | 904 | 956 | 236 | |
| FY09 | 1,103 | 988 | 361 | |
| FY10 | 1,378 | 1,320 | 411 | |
| FY11 | 1,410 | 1,376 | 469 | |
| FY12 | 1,686 | 1,707 | 428 | |
| FY13 | 1,548 | 1,569 | 421 | |
| FY14 | 1,434 | 1,265 | 593 | |
| FY15 | 1,762 | 1,528 | 827 | |
| FY16 | 1,803 | 2,054 | 578 | 29 (03/21/16) |
| FY17 | 2,818 | 2,113 | 1,209 | 49 (03/20/17) |
| FY18 | 3,396 (pace) | 2,628 (pace) | 1,712 (05/22/18) | 80 (06/22/18) |

## Impact of FOIA Spike on OIP Resources

17. As stated in paragraph 1, above, the IR Staff is responsible for processing FOIA requests seeking records from within OIP and from six senior leadership offices of the Department of Justice, including OLP. Because of the significant surge in FOIA requests, the complexity of those requests, and dramatic increase in litigation, the IR Staff, which currently consists of ten employees, in addition to four reviewers, is under significant strain to keep up with this dramatically increased workload.

18. In addition to the increase in overall backlog of FOIA requests, the surge in incoming FOIA requests has also created backlogs at each stage of OIP's search process, described in more detail below, and has caused a significant increase in the time necessary to conduct electronic searches. Moreover, there has been a notable increase in the complexity of records searches and the volume of electronic data implicated in these records searches over the past two years.

## OIP's Efforts to Respond to Surge in Requests

19.    As detailed above, both the number of incoming FOIA requests and the number of requests subject to FOIA lawsuits surged approximately two years ago, and have continued to

---

[8] OIP did not routinely track litigation statistics until March 2016.

accelerate since that time.  In an effort to ensure that OIP was able to meet litigation-related

deadlines, and considering the strain on IR Staff resources which were already nearly exhausted

by a years-long trend of increasing numbers of requests received, OIP engaged in a number of

active steps in order to improve efficiencies in the IR Staff's FOIA processing system, structure,

staffing, and search methods, and to address the FOIA backlog.

20. Mid-way through FY 2016 (coinciding with the above-referenced request and

litigation spikes), OIP undertook a comprehensive review of the IR Staff structure and

procedures to identify opportunities to create additional efficiencies, surveyed other agencies and

DOJ components to learn from their successes and best practices in reducing backlog and, as a

result of this careful analysis, reorganized the IR Staff and its request-processing structure.  As

opposed to the former model in which individual staff members processed each request from

start-to-finish, this newer model implemented a more agile team approach that better aligned

with OIP's existing multi-track processing system in which requests are processed on a first-in,

first-out basis within the "expedited," "simple," and "complex" tracks.  For example, OIP

observed that "simple track" requests, which entail less time and/or work to process[9] and which,

ideally, could be processed within the FOIA's established timelines, were not being processed as

quickly as they could be, largely because each individual staff member was facing a growing

backlog of assigned requests, all with competing interests, priorities, and deadlines.  One staff

member alone might have been assigned hundreds of requests, including "simple track" requests

---

[9] DOJ FOIA regulations state that components "may also designate additional processing tracks
that distinguish between simple and more complex requests based on the estimated amount of
work or time needed to process the request. Among the factors a component may consider are the
number of pages involved in processing the request and the need for consultations or
referrals. Components shall advise requesters of the track into which their request falls and, when
appropriate, shall offer the requesters an opportunity to narrow their request so that it can be
placed in a different processing track."  28 C.F.R. § 16.5(b) (2017).

which require immediate attention in order to complete quickly; "complex track" requests which require careful and time-intensive searches and records review, often involving sensitive or classified records implicating many other DOJ or agency equities; "expedited requests" which are required to be processed "as soon as practicable";[10] and lastly, requests subject to litigation, which demanded the highest priority on staff members' time in order to ensure that court deadlines and obligations were being fulfilled.

21. A key element of the IR Staff reorganization was the development of dedicated staff focused on intake of new requests, search initiation, requester negotiations, and "simple track" requests – i.e., tasks requiring speed.[11]  As a direct result of this reorganization, OIP's "simple track" processing time improved notably, and by FY 2017 fell to an average of 22.04 days from 35.32 days in FY 2015 (averaged across simple track processing time averages for all leadership offices for which OIP handles requests.)[12]  As such, most "simple track" requests, including requests involving simple (generally, not e-mail) searches, are able to be completed within the FOIA's statutory time limits.

22. Another key element of the IR Staff reorganization allowed other IR Staff members the time needed to focus on more complex requests, including expedited requests, which might

---

[10] 28 C.F.R. § 16.5(e)(4).

[11] Currently, there are three members on this team.  These three individuals are assigned, on average, approximately 280 requests each.

[12] In FY 2015, prior to the reorganization, the average "simple track" processing times were as follows (in days):  OAG (30.3), ODAG (39.76), OASG (27.29), OLA (43.54), OLP (28.03), PAO (44.25), OIP (34.04).  *See* U.S. DEP'T OF JUST. ANN. FREEDOM OF INFO. ACT REP. FISCAL YEAR 2015, at 38-39, *available at* https://www.justice.gov/oip/department-justice-annual-foia-report-fy15-Full_Report/download.  In FY 2017, by comparison, after the reorganized teams had been in place for over a year, the average "simple track" processing times were as follows (in days):  OAG (22.96), ODAG (17.77), OASG (17.38), OLA (17.33), OLP (14.84), PAO (48.89), OIP (15.08).  *See* U.S. DEP'T OF JUST. ANN. FREEDOM OF INFO. ACT REP. FISCAL YEAR 2017, at 39-40, *available at* https://www.justice.gov/oip/page/file/1024596/download.

not have been possible had the competing demands and constant "to-dos" of faster-turnaround cases and actions remained in their caseload.  Again, OIP observed direct and notable improvement as a result – and was able to greatly improve overall processing metrics (*see*, *e.g.*, ¶¶ 12-13, *supra*) and reduction in the age of our oldest requests.[13]

23. The IR Staff has not been able to substantially increase staffing levels, or even to backfill all existing open positions, due to budgetary constraints.  Nevertheless, OIP is doing everything possible to work within existing budgetary constraints and has responded to the surge in requests by reallocating staffing resources within the Office.  On an *ad hoc* basis, staff members from OIP's other teams (i.e. the Appeals and Compliance Staffs) have assisted with the IR Staff's work, including, in particular, work on especially complex, voluminous, and time-intensive or time-sensitive requests.  OIP has also obtained exceptions to hire a limited number of experienced attorneys, in response to the increase not only in volume, but in complexity, of FOIA requests, and in response to the increase in litigation stemming from those requests.  More recently, the IR Staff has, this past month, permanently procured a senior reviewing attorney from another team within the Office.  The IR Staff expects to add another permanent senior reviewing attorney from this other team later this calendar year.

24. Although the reorganization and staffing actions discussed above have greatly improved the IR Staff's productivity, improved "simple track" processing times, and allowed renewed focus on effectively addressing backlog reduction, OIP's FOIA backlog continues to increase.  OIP's electronic search backlog (including delays both within OIP directly, and within OIP's electronic search support team) also continues to increase.  OIP has identified two primary

---

[13] At the start of FY 2018, for example, OIP's oldest pending request was seven months "younger" than the oldest pending request at the start of FY 2017.

reasons for these increases:  (1) the skyrocketing volume of incoming requests which, despite

record-breaking numbers of requests processed, outpaces the number of requests processed; and

(2) the staggering increase in litigation matters and the disproportionate effect of litigation on

OIP's FOIA resources.

## Impact of Litigation on OIP's FOIA Process

25. Of particular relevance in the instant case, the surge in complex electronic records

searches required for requests subject to litigation has dramatically reduced OIP's ability to

respond efficiently to non-litigation requests requiring similar electronic records searches,

because OIP and its electronic records search support team have had to continually shift

litigation searches to the front of the electronic search queue.  For example, requesters who

choose not to litigate, including those whose own requests implicate significant or newsworthy

topics of considerable public interest, will have their place in the first-in, first-out search queue

repeatedly shifted back as requesters who file suit are repeatedly moved ahead in line.  Not only

is this constant reshuffling of search priorities inefficient, both for OIP and for its search support

team, it is self-perpetuating in that, the more litigation requests are prioritized, the more it

encourages requesters to file litigation.  This reprioritization has the unfortunate effect of

essentially overriding OIP's multitrack, first-in, first-out processing system and disadvantaging

requesters who do not file suit, by pushing all other non-litigation requesters, including those

granted expedited processing or who have worked with OIP to narrow the scope of their

requests, behind litigation requests, regardless of how long they have been waiting in the search

queue.

26. In addition to the inefficiencies created by prioritizing FOIA requests subject to

litigation, resulting in the disproportionate and inequitable delay on non-litigation requests, the

staggering increase in litigation matters – nearly tripling in the past two years – has also dramatically affected the time necessary to complete electronic records searches.  In order to address this disproportionality, OIP determined, in March 2018 (approximately halfway through FY 2018), that it could no longer prioritize litigation requests, particularly in the electronic search queue, simply because a requester has filed a lawsuit.

27. To demonstrate the impact of prioritizing litigation above all other requests in the search queue:  requests subject to litigation make up about 5% of OIP's overall FOIA request backlog.  Yet, for roughly the first half of FY 2018 (before OIP determined that it can no longer prioritize electronic records searches simply because of litigation), almost half of the searches completed by OIP's search support team were for litigation requests.  In other words, the 5% of backlogged requests in litigation accounted for nearly 50% of the electronic records searches completed.  Moreover, all of the non-litigation searches completed the first half of FY 2018 involved relatively small/narrow searches – resulting in locating a volume of records averaging a tenth of the size of our average litigation search.  Put differently, the result of prioritizing litigation over everything else in the backlog was that OIP's search support team was only able to complete "smaller" searches for pending non-litigation requests, leaving larger searches pending for extended periods of time.

28. Since OIP stopped prioritizing litigation searches, two-thirds of the electronic records searches completed have been for non-litigation requests.  This indicates that OIP's decision to stop re-shuffling searches based purely on the filing of a lawsuit has already resulted in a marked increase in productivity for completing searches in the 95% of OIP's pending requests that are not subject to litigation.

## OIP's Electronic Records Search Process

29. Incoming FOIA requests to OIP are assigned to a Government Information Specialist (GIS) or Attorney-Advisor.  OIP makes determinations upon receipt of a FOIA request, both as to the appropriate senior leadership office or offices for which to conduct initial records searches, and as to the appropriate records repositories and search methods to use in conducting records searches on behalf of the designated senior leadership offices.  Assessments of where responsive records are likely maintained are based on a review of the content of the request itself and the nature of the records sought therein, as well as our familiarity with the types and location of records that each senior leadership office maintains, discussions with knowledgeable personnel in the senior leadership offices, and any research that OIP staff may conduct on the topic of the request.  When searching the records of leadership office custodians identified as potentially having responsive material, OIP staff employ any one of a variety of search methods, or a combination of methods, depending on a number of factors, including the type of records systems implicated in the search.  Potentially responsive records may be located in e-mail systems, electronic files, hard-copy (paper) files, and/or any other locations implicated by the nature of the requested records.

30. E-mail and other electronic records are conducted using a sophisticated electronic e-discovery system that searches through a given custodian's e-mail collection and electronic computer files to isolate potentially responsive records within each custodian's collection of digital records.  Because of the technical nature of these searches, OIP's electronic searches are conducted by a specialized e-discovery/search support team within a separate component of the Department – the Justice Management Division's (JMD) Office of the Chief Information Officer (OCIO), using search parameters that are provided by OIP staff.

31. When processing a FOIA request implicating records maintained by one or more of the senior leadership offices, OIP typically initiates records searches by sending a search notification e-mail to the specific office(s), which notifies the office(s) of the receipt of the request and informs personnel that OIP will conduct an electronic search of records maintained by relevant staff members within that office.  This notification also initiates a dialogue and provides the leadership offices with the opportunity to inform OIP's search by identifying particular staff members who are most likely to maintain potentially responsive records, to identify other types of records systems that may need to be searched, and/or to provide guidance to OIP regarding search parameters based on the subject-matter expertise of the office(s) implicated.

32. Based on any pertinent information provided by the office regarding the scope of the records search, combined with OIP's research regarding the topic of the request, our assessment of the potential records custodians, and the records implicated by the request, the OIP staff member who is assigned the FOIA request creates a "data request form."  This form identifies the relevant custodians, search time-frame, types of electronic records to be searched, and search terms.  Once the data request form undergoes an internal review process, to ensure that the search is appropriately tailored to the request and records at hand, the data request form is submitted to the OCIO e-discovery/search support team, which then conducts the searches of senior leadership e-mail accounts and electronic computer files for OIP using the e-discovery platform referenced above.

33. Upon receipt of OIP's data request form, JMD OCIO staff trained on the e-discovery system then undertake a series of steps to complete the search.  First, OCIO staff research the

e-mail and electronic accounts of each custodian identified in OIP's data request form, to ensure that the correct account data for each custodian are located and searched.[14]  Each custodian's relevant account data must then be located, indexed, and collected into the e-discovery system by a search team member operating the e-discovery search application.  Once the data for all custodians are replicated and loaded into the e-discovery system, OIP's search parameters are run across the full data collection, and relevant items (e-mails, attachments, electronic calendars and/or stand-alone electronic documents from custodian's computer files) are extracted from the e-discovery platform, and reimported into a new data-set within the platform containing only the information that is responsive to the search parameters.  At key stages throughout this process, OCIO search team members conduct quality assurance protocols to ensure that the relevant data is successfully retrieved.  Upon completion of these processes, access of the search result data is granted to OIP staff for review through the e-discovery platform.

34. While the time needed to complete each search request submitted by OIP will vary depending on a number of factors, including the number and size of each records custodian's accounts and any technical issues that may arise with the data therein, OCIO's search team is able to complete the entire search process at an average rate of 1.5 hours per search custodian. The number of search custodians implicated in each search request is the primary factor in the OCIO team's search completion time.

35. Between June 1 and June 20, 2018, OIP submitted thirty-two search requests to the OCIO search team.  The number of search custodians implicated in each of these search requests

---

[14] Because custodians sometimes move across different roles and offices during their DOJ careers, any one custodian may have multiple DOJ accounts.  This step in the search team's process is thus critical to ensuring that all relevant data is retrieved for OIP's searches.

range from one to ninety-two, with an average of twenty custodians per request.[15]  Applying

OCIO's average search rate of 1.5 hours/custodian, the requests submitted by OIP thus far in

June will <u>each</u> require between 1.5 and 138 person-hours to complete, with an average of 30

working hours for one OCIO search team member to complete each search.

36. The OCIO search team which handles OIP's electronic records searches consists of a

total of five people (two full time employees and three contractors).  In addition to OIP's

electronic searches, this staff provides e-discovery and FOIA search support for many other DOJ

functions, including other components' FOIA searches and records searches for Congressional

inquiries, Inspector General requests, and litigation holds.

37. Although OIP's utilization of JMD OCIO's services constitute just one aspect of the

OCIO search team's portfolio, OIP's FOIA searches on behalf of the DOJ senior leadership

offices make up the largest share of the search team's work.  Accordingly, OIP's skyrocketing

increase in incoming requests, particularly in requests requiring complex electronic searches, has

had a direct, measurable, and proportionate impact on the OCIO search team's workload.  For

example, the number of searches completed annually by the OCIO team jumped from 37 to 185

from FY 2014 to FY 2017.  The number of records custodians implicated in these cases has

increased, staggeringly, nearly ten-fold since FY 2014:  from 218, to 2,065 in FY 2017.  The

volume of data searched by the OCIO team also continues to increase at an astounding rate, from

1,672 gigabytes in FY 2014, to 23,827 gigabytes <u>so far</u> this fiscal year.  This expanding search

volume is indicative of the increasing complexity of the searches being conducted, and in

---

[15] The search for Plaintiff's request includes 21 custodians and is therefore projected to require
approximately 31.5 hours of OCIO search time.

particular, the increasing number of records custodians implicated in those searches, requiring increasingly more time and resources to complete.

38. The spike in the number and size of search requests being submitted to the OCIO search team has taxed OCIO's resources, particularly its staff. Like OIP, JMD/OCIO is doing everything possible to increase staffing within existing budgetary constraints. OCIO has responded to the increased demands by reallocating staff resources on a part-time basis from other sections of JMD and, recently, by adding another contractor to the search team (raising the overall staffing level from 4 to 5). JMD OCIO is also actively working to backfill another full-time position on the search team, which has remained unfilled after a staff departure several years ago due to budgetary constraints and hiring freezes. Moreover, OCIO has actively worked to improve efficiencies by streamlining its search processes over the past several years. For example, OCIO now actively maintains preemptively-indexed data for certain former Department employees whose electronic records are frequently sought in OIP's FOIA requests, which substantially reduces the time necessary to provide search results from these custodians' accounts upon request from OIP. As a direct result of these efforts, OCIO has made significant strides in its productivity – completing, on average, five times the number of cases per month this year than in FY 2014.

39. Once the search results are provided to OIP by the OCIO search team, the GIS or Attorney-Advisor assigned to the request undertakes an initial survey of the universe of records collected by the search. At this time, secondary searches may be run across the search results in order to isolate potentially responsive records. These secondary searches are informed by the OIP staffer's assessment of the search results, including evidence of "false positives" retrieved by the search keywords but otherwise clearly unrelated to the topic of the request. If the search

results are voluminous, OIP staff frequently engage in conversations with requesters to narrow or target the types of records being sought, after which further searches are conducted within the data collection to isolate these records.  OIP staff may also create and employ a variety of data "tags" to organize and categorize the search results – which further informs discussions with requesters about the search results, and which facilitates the development of an organized review and processing plan for the potentially responsive records.

40. Once the initial survey, requester outreach, secondary searches, and records categorization, as applicable, are completed, the GIS or Attorney-Advisor then conducts a document-by-document review of the potentially responsive universe.  Depending on the complexity of the records, a second-level review may be required at this time.  Records identified as responsive based on this document-by-document review are then exported out of the system and into an internal OIP shared network drive for processing.

## **OIP's Handling of Plaintiff's Request**

41. As discussed above, Plaintiff submitted its FOIA request on January 30, 2018.  OIP assigned the request to the "complex" processing track[16] and informed Plaintiff of that fact on February 28, 2018.  Also on February 28, 2018, OIP sent a search notification to OLP, advising OLP of the request and initiating a search in that Office.  After this search was initiated, OLP promptly and thoroughly canvassed its documents and identified pertinent custodians and search methods, which it then discussed in detail with OIP, resulting in a comprehensive search plan tailored to OLP's practices and the nature of the information sought by Plaintiff's request.

---

[16] There were 1,370 requests in the "complex" track as of June 13, 2018.  Plaintiff's request is number1,022 in that track.

42. Plaintiff's request seeks records provided to OLP by nominees to federal circuit courts since January 20, 2017.  OLP works with the Attorney General to advise the President on nominations for Article III and certain Article I judgeships. After the President has submitted a nomination to the Senate, OLP works with the White House and the Senate Judiciary Committee to secure the nominee's confirmation.  While the process may be different for each nominee, it is generally lengthy, time consuming, and collaborative.  There is no single file produced or provided to OLP that constitutes the final submission of all materials by and on behalf of a judicial nominee.  Further, no single individual within OLP deals exclusively with a specific nominee – in fact, nominees generally interact with numerous OLP staff members at various stages of the nomination and confirmation process.  As such, there is no centralized location that contains the entire universe of documents relating to a specific nominee, nor is any single custodian in possession of all documents relating to any specific nominee.  Rather, the process is an iterative one, conducted as a long-term dialogue between OLP staff and the nominee (or individuals working on behalf of the nominee).  The practical result of this iterative process is that each nominee may have upwards of ten to twenty different individuals working on their behalf, over the course of months or years, each potentially in possession of e-mail and electronic documents from or on behalf of the nominee.[17]  As a result, OIP's search for responsive material for this particular FOIA request implicates the e-mail and electronic files of a significant number (twenty-one) of records custodians, as well as hard-copy/physical mailings

---

[17] In addition to the significant amount of e-mail and electronic documents potentially accumulated, OLP receives submissions of relevant information in the form of physical mailings from or on behalf of each nominees.  This material will need to be hand-searched in response to Plaintiff's request.  OIP anticipates being able to complete the hard-copy searches before the conclusion of the requested stay.

from nominees, and is expected to return a substantial amount of potentially responsive materials.

43. After the instant action was filed, counsel for OIP engaged in a dialogue with Plaintiff's counsel regarding the complexity of the searches implicated by Plaintiff's request, the resultant estimate for completion of the searches, and ways in which Plaintiff's request could be narrowed in order to speed up OIP's searches.  Ultimately, Plaintiff narrowed its FOIA request such that it seeks "all records that have been provided to the Office of Legal Policy by individuals (or on the behalf of those individuals) who have been nominated to judgeships on U.S. Court of Appeals for the Fifth Circuit and the U.S. Court of Appeals for the D.C. Circuit." But Plaintiff was otherwise not amenable to narrowing the types of records sought (e.g., by limiting its request to seek only hard-copy documents or material provided to the Senate, or focusing its request on one aspect of OLP's process) in any way which the Defendant anticipated would meaningfully reduce the breadth of electronic searches required.  Accordingly, and in light of OLP's collaborative work with nominees as described above, OIP will still need to search the electronic accounts of all records custodians originally identified by OLP when the request sought material submitted to OLP by all appellate court nominees, in addition to hard-copy material maintained by OLP.

44. OIP has placed the data request form for Plaintiff's FOIA request into the electronic records search queue, where it is currently approximately positioned at number 228 out of a total of 332 OIP search requests pending OCIO searches.  In the ordinary course, these search

requests would be conducted on a first-in, first-out basis.[18]  Applying the JMD OCIO search

team's rate of 1.5 hours/custodian, and an average of twenty custodians per search request (*see*

¶ 35, *supra*), OCIO staff would need to expend approximately 6,810 person-hours, or 170.25

working weeks, before Plaintiff's request (which would itself be projected to take 31.5 person

hours to complete) comes to the front of the queue.  Even if all five OCIO search team members

were able to commit 100% of their time to OIP's FOIA searches (notwithstanding their other

Departmental responsibilities), Plaintiff's request would take a projected 34.05 weeks, or

approximately eight and a half months, to complete.  OIP's requested stay actually would

provide a faster search-return estimate than this projection, in consideration of Plaintiff's

willingness to narrow its request (and the potential for a reduced universe of material to be culled

from the electronic searches, resulting in faster quality control checks and assessments by OCIO

and OIP staff).

45. For the reasons discussed above, OIP requests that the Court enter a stay through

January 13, 2019, to allow Defendant to complete its search for any records responsive to

Plaintiff's FOIA request, preliminarily review any potentially responsive agency records that are

subject to the FOIA that it collects, and confer with Plaintiff over a processing schedule.  Given

the dramatic surge in incoming FOIA requests and litigation matters, which have caused a

significant increase in the time necessary to conduct adequate electronic searches, a stay would

allow for OIP to continue its administrative process in conducting its search for records.  Denial

---

[18] It should be noted that, while first-in, first-out is the general order, other variables may affect
the precise order in which searches would be completed – such as, for instance, whether the
searches include frequently-requested custodians' files which are pre-indexed as part of OCIO's
streamlined process. *See, e.g.*, ¶ 38, *supra*.

of a stay in this matter would require OIP and JMD OCIO to prioritize the electronic search in this request to the disadvantage of other similarly situated requesters.

I declare under penalty of perjury that the foregoing is true and correct.


Vanessa R. Brinkmann

Executed this 22nd day of June 2018.

# Exhibit A



January 30, 2018

**Submitted via Fax and FOIAonline**

Laurie Day
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, D.C. 20530-0001
Fax: (202) 514-1009
http://www.justice.gov/oip/oip-request.html

**Re:    Freedom of Information Act Records Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, and the
Department of Justice FOIA regulations at 28 C.F.R. part 16, Democracy Forward Foundation
makes the following request for records of the Office of Legal Policy in the Department of
Justice.

**Records Requested**

Please provide all records that have been provided to the Office of Legal Policy by individuals
(or on the behalf of those individuals) who have been nominated to judgeships on the federal
courts of appeals.

**Scope of Search**

The time period for the request is January 20, 2017, until the day the search is run.

For speed of processing, a rolling release of records is requested.

Please search for records regardless of format, including paper records, electronic records,
audiotapes, videotapes, photographs, data, and graphical materials. This request includes,
without limitation, all correspondence, letters, emails, attachments text messages, instant
messages, slack messages, calendar entries, facsimiles, telephone messages, voice mail
messages, and transcripts, notes, minutes, or audio or video recordings of any meetings,
telephone conversations, or discussions.

1

FOIA requires agencies to disclose information, with only limited exceptions for information that would harm an interest protected by a specific exemption or where disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See id.* § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office, installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period. If all relevant records are not produced within that time period, we are entitled to a waiver of fees for searching and duplicating records under 5 U.S.C. § 552(a)(4)(A)(viii)(I).

**Fee Waiver Request**

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10, Democracy Forward Foundation requests a waiver of all fees associated with processing records for this request. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of these operations by the public in a significant way. Moreover, the request is for noncommercial purposes.

Pursuant to 28 C.F.R. § 16.10(k)(1), disclosure of the requested records is "likely to contribute significantly to public understanding of the operations or activities of the government." The requested records will therefore have a "connection that is direct and clear" to operations or activities of the Federal Government. *Id.* § 16.10(k)(2)(i). Because these records will shed light on the reasons for this change in a manner that has not already been made public, they also will be "meaningfully informative" about government operations or activities. *Id.* § 16.10(k)(2)(ii)(A). As described below, Democracy Forward Foundation intends to use its website and social media accounts to ensure that the records disclosed in response to this request will "contribute to the understanding of a reasonably broad audience of persons interested in the

subject," *id.* § 16.10(k)(2)(ii)(B), and this contribution will be "significant[]," *id.* § 16.10(k)(2)(ii).  In sum, the requested records will shed light on the government's justification for claiming corporate tax cuts will lead to wage grown in contradiction of past analysis.

This request is primarily for non-commercial purposes. *Id.* § 16.10(k). Democracy Forward Foundation is a nonprofit organization organized under Internal Revenue Code § 501(c)(3). A core mission of Democracy Forward Foundation is to educate the public about improper government activity.  Democracy Forward Foundation intends to use the materials gathered to educate the public through its website, press releases, and social media outlets.[1]

Accordingly, Democracy Forward Foundation qualifies for a fee waiver.

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within the 20 day period, please contact Robin Thurston as soon as possible at foia@democracyforward.org or 202-448-9090.

We appreciate your assistance and look forward to your prompt response.

Sincerely,
/s/ Robin Thurston

Robin Thurston
Senior Counsel
Democracy Forward Foundation

---

[1] *See* Democracy Forward Twitter, @DemocracyFWD; Democracy Forward Facebook, https://www.facebook.com/DemocracyFwd/; https://democracyforward.org/work/democracy-forward-foundation-doc/.

# Exhibit B



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

February 28, 2018

Ms. Robin Thurston
Democracy Forward Foundation
P.O Box 34552
Washington, DC  20043                    Re:    DOJ-2018-002362 (OLP)
foia@democracyforward.org                       VAV:JMS

Dear Ms. Thurston:

 This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated and received in this Office on January 30, 2018, in which you requested records that have been provided to the Office of Legal Policy by individuals, or on behalf of those individuals, who have been nominated to judgeships on the federal courts of appeals, dating since January 20, 2017.  This response is made on behalf of the Office of Legal Policy.

 The records you seek require a search in and/or consultation with another Office, and so your request falls within "unusual circumstances."  See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii).  Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute.  For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request.  At this time we have assigned your request to the complex track.  In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track.  You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options.

 We have not yet made a decision on your request for a fee waiver.  We will do so after we determine whether fees will be assessed for this request.

 I regret the necessity of this delay, but I assure you that your request will be processed as soon as possible.  If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact me by telephone at the above number or you may write to me at the above address.  You may also contact our FOIA Public Liaison, Douglas Hibbard, for any further assistance and to discuss any aspect of your request at: Office of Information Policy, United States Department of Justice, Suite

-2-

11050, 1425 New York Avenue, NW, Washington, DC 20530-0001; telephone at 202-514-3642; or facsimile at 202-514-1009.

Lastly, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

James Smith
Attorney-Advisor