UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DEMOCRACY FORWARD FOUNDATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 18-cv-00734 (APM) |
| DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINON AND ORDER**

**I.    INTRODUCTION**

This case involves a rare ask for a stay by a federal agency in responding to a Freedom of Information Act ("FOIA") request under the D.C. Circuit's decision in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976). Defendant Department of Justice maintains that a stay is warranted due to an unexpected, dramatic increase in FOIA requests received by the agency over the last two years. Defendant submits that, acting within the agency's resource constraints, it has exercised due diligence in responding to the increased number of FOIA requests, but nevertheless requires a stay under the extraordinary circumstances it faces. Plaintiff Democracy Forward Foundation and a group of amici oppose the stay.

For the reasons that follow, the court grants Defendant's Motion for an *Open America* stay. These proceedings shall be stayed until January 13, 2019, at which time Defendant must be prepared to produce records responsive to Plaintiff's FOIA request.

## II.     BACKGROUND

Plaintiff Democracy Forward Foundation is a "not-for-profit media organization" that "works to promote transparency and accountability in government, in part by educating the public on government actions and policies." Compl., ECF No. 1, ¶ 7. Plaintiff indicates that it fulfills its mission, in part, by posting "information it receives from FOIA requests on the internet," as well as writing about this information in a variety of media outlets. *Id.*

This action concerns a FOIA request made by Plaintiff on January 30, 2018, to Defendant Department of Justice, Office of Information Policy ("OIP"). Plaintiff's request sought "all records that have been provided to the Office of Legal Policy by individuals (or on the behalf of those individuals) who have been nominated to judgeships on the federal courts of appeals." *Id.* ¶ 9. Plaintiff identified the relevant time period for the request as "January 20, 2017, until the day the search is run." *Id.* ¶ 10.

Defendant asserts that when it received Plaintiff's request, OIP "assigned the request to the 'complex' processing track" and "sent a search notification to the [Office of Legal Policy]." Def.'s Mot. for Stay of Proceedings, ECF No. 12 [hereinafter Def.'s Mot.], Decl. of Vanessa R. Brinkmann, ECF No. 12-1 [hereinafter Brinkmann Decl.], ¶ 41. Additionally, OIP sent a "search notification" to the Office of Legal Policy, which "promptly and thoroughly canvassed its documents and identified pertinent custodians and search methods, which it then discussed in detail with OIP, resulting in a comprehensive search plan" to procure the information sought by Plaintiff. *Id.*

On February 28, 2018, OIP sent a letter via e-mail to Plaintiff, acknowledging receipt of the FOIA request and "informing Plaintiff that because the request required 'a search in and/or consultation with another Office,' 'unusual circumstances' existed that warranted an extension of

time to respond beyond the ten additional days provided by statute." Def.'s Mot. at 2; *see also* Brinkmann Decl., Ex. B. In the month that followed, Defendant provided no more information to Plaintiff regarding the status of its FOIA request. Compl. ¶¶ 18–19.

Plaintiff filed this FOIA action on April 2, 2018. *See generally Compl*. Thereafter, the parties conferred and agreed to narrow Plaintiff's FOIA request to "all records that have been provided to the Office of Legal Policy by individuals (or on the behalf of those individuals) who have been nominated to judgeships on [the] U.S. Court of Appeals for the Fifth Circuit and the U.S. Court of Appeals for the D.C. Circuit," presumably also from January 20, 2017, onward. Brinkmann Decl. ¶ 43. Plaintiff asserts that this tailored request now covers only six individuals. Plaintiff's Opp'n to Def.'s Mot., ECF No. 15 [hereinafter Pl.'s Opp'n], at 2.

Defendant filed its Motion for Stay of Proceedings on June 22, 2018. *See* Def.'s Mot. As grounds for its request, Defendant claimed that it had seen an unexpected rise in both the number and complexity of FOIA requests, as well as FOIA-related litigation, beginning in Fiscal Year 2017, and that despite the agency's diligence in responding to these requests, it lacked the adequate resources to address many FOIA requests, including Plaintiff's, within the statutory limits. *See generally id*. Defendant supported its motion with the Declaration of Vanessa R. Brinkmann, Senior Counsel in OIP. *See generally* Brinkmann Decl. Plaintiff opposed the stay. *See* Pl.'s Opp'n.

On July 20, 2018, several organizations sought leave to file a joint amicus curiae memorandum in this matter. *See* Mot. for Leave to File Amicus Curiae Memorandum, ECF No. 14. These organizations are American Oversight, Citizens for Responsibility and Ethics in Washington, National Security Counselors, Open the Government, Project in Government

Oversight, Public Citizen, Inc., and Sunlight Foundation. The court granted leave to file the memorandum. *See* Minute Order, July 20, 2018.

**III.   LEGAL STANDARD**

FOIA provides that, upon receipt of a request, the responding agency must "determine within 20 days . . . whether to comply with such request and shall immediately notify [the requestor]." 5 U.S.C. § 552(a)(6)(A)(i). The statute allows the agency to grant itself an additional 10 days to respond in "unusual circumstances," so long as the agency notifies the requestor of the unusual circumstances and specifies "the date on which a determination is expected to be dispatched." *Id.* § 552(a)(6)(B)(i). Upon receiving notice of a unilateral extension, the requestor has the right to "limit the scope of the request so that it may be processed within" the applicable time limit. *Id.* § 552(a)(6)(B)(ii). "Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request." *Id.* § 552(a)(6)(C)(i). In the event an agency fails to meet the statute's time limits, the statute permits the requestor to seek relief in federal court without first exhausting administrative remedies. *See id.* §§ 552(a)(4)(B), 552(a)(6)(C)(i). Congress's insistence that agencies timely respond to FOIA requests is therefore apparent from the face of the statute.

Congress, however, provided agencies with a "safety valve" from the statute's strict time limits. *Open America*, 547 F.2d at 610. The agency may obtain a stay of proceedings if it "can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the [FOIA] request." 5 U.S.C. § 552(a)(6)(C)(i). In this Circuit, such stays are commonly referred to as "*Open America* stays," so named after the leading decision on the subject. In *Open America,* the D.C. Circuit held:

> [W]e interpret Section 552(a)(6)(C) to mean that "exceptional circumstances exist" when an agency . . . is deluged with a volume

4

> of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.

547 F.2d at 616 (quoting 5 U.S.C. § 552(a)(6)(C)). Accordingly, when the *Open America* standard is met, FOIA's time limits "become not mandatory but directory." *Id.* The court concluded: "The good faith effort and due diligence of the agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act." *Id.*

Over 20 years after *Open America*, in 1996, as part of the Electronic Freedom of Information Act, Congress amended FOIA to cabin the definition of "exceptional circumstances." Section 552(a)(6)(C)(ii) now provides:

> For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

5 U.S.C. § 552(a)(6)(C)(ii). According to legislative history of the Act, Congress intended for this amendment to be "consistent with the holding in *Open America*," and only "clarif[ied] that routine, predictable agency backlogs for FOIA requests do not constitute exceptional circumstances." H.R. Rep. 104–795 at 24 (1996), reprinted in 1996 U.S.C.C.A.N. 3448, 3467. Thus, it is not enough that an agency receives a high number of FOIA requests, or even that an agency has a large backlog of requests to which it must respond. Rather, an agency must show that the number of requests received in the relevant period was truly unforeseen and remarkable. *See e.g. Leadership Conference on Civil Rights v. Gonzales,* 404 F. Supp. 2d 246, 259 n.4 (D.D.C. 2005) (noting that

"[a]n agency must show more than a great number of requests to establish[ ] exceptional circumstances under the FOIA"). Since the 1996 amendments, courts in this District have continued to hold that "where an agency is making good faith efforts and exercising due diligence in processing requests on a first-in, first-out basis, a stay of proceedings is authorized so long as the agency also demonstrates 'reasonable progress in reducing its backlog of pending requests.'" *Ctr. for Pub. Integrity v. Dep't of State,* Civ. Action No. 05-2313 (JDB), 2006 WL 1073066, at *2 (D.D.C. Apr. 24, 2006) (citing *Appleton v. FDA,* 254 F. Supp. 2d 6, 9–10 & n.4 (D.D.C. 2003); *Wilderness Soc'y v. Dep't of the Interior,* No. Civ. A. 04-0650 CKK, 2005 WL 3276256, at *6 (D.D.C. Sept. 12, 2005)) (internal quotations marks omitted)).

When considering a request for an *Open America* stay, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citations omitted); *see also Gov't Accountability Project v. U.S. Dep't of Health & Human Servs.*, 568 F. Supp. 2d 55, 59 (D.D.C. 2008).

## IV. DISCUSSION

Defendant contends that a stay is warranted in this case because the recent, unanticipated spike in FOIA requests and litigation, combined with its limited resources, constitute "exceptional circumstances," and because the agency is "exercising due diligence" in responding to these requests, including that of Plaintiff. *See* Def.'s Mot. at 6–12. Alternatively, Defendant argues that, even if the increase in requests was foreseeable, a finding of exceptional circumstances is still warranted because the agency is making reasonable progress in reducing its backlog of requests. *See id.* at 13–15. Because the court finds that exceptional circumstances exist based on the dramatic increase in FOIA requests and the agency's exercise of due diligence in responding to

those requests, the court need not reach the question whether Defendant is making reasonable progress in reducing its backlog. *See Ctr. for Pub. Integrity*, 2006 WL 1073066 at *5 (holding that the "reasonable progress" requirement does not apply where "the increase in the workload was not 'predictable'").

## A. Deluge of Requests

The parties vigorously dispute whether the recent increase in FOIA requests submitted to OIP is "vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests . . . " *Open America*, 547 F.2d at 616. Defendant has the better of that argument.

The Brinkmann Declaration establishes that the uptick in FOIA demands over the last two years is a significant departure from the rate of increase seen over the prior decade. The summary chart below included in the Brinkmann Declaration provides a snapshot of the FOIA demands placed on OIP since FY 2008.

|      | Received     | Processed    | Backlog         | Litigation[8]  |
|------|--------------|--------------|-----------------|----------------|
| FY08 | 904          | 956          | 236             |                |
| FY09 | 1,103        | 988          | 361             |                |
| FY10 | 1,378        | 1,320        | 411             |                |
| FY11 | 1,410        | 1,376        | 469             |                |
| FY12 | 1,686        | 1,707        | 428             |                |
| FY13 | 1,548        | 1,569        | 421             |                |
| FY14 | 1,434        | 1,265        | 593             |                |
| FY15 | 1,762        | 1,528        | 827             |                |
| FY16 | 1,803        | 2,054        | 578             | 29 (03/21/16)  |
| FY17 | 2,818        | 2,113        | 1,209           | 49 (03/20/17)  |
| FY18 | 3,396 (pace) | 2,628 (pace) | 1,712 (05/22/18)| 80 (06/22/18)  |

Brinkmann Decl. ¶ 16. As the chart shows, the number of FOIA requests received by OIP increased from 904 in FY 2008 to 1803 in FY 2016. During this period, the number of FOIA requests went up, but at a steady pace. The average annual increase from FY 2008 to FY 2016

(including the reductions seen in FY 2013 and FY 2014) was 100 requests. Compare that to the spike experienced in the last two years. From FY 2016 to FY 2017, the number of FOIA requests increased by 1,015—a *ten-fold* increase over the average increase over the prior nine years. The current fiscal year saw not quite as dramatic a jump, but a significant one nonetheless. The number of requests is expected to increase by 578, a more than *five-fold* increase over the pace seen from FY 2008 to FY 2016. What these large spikes mean is that OIP has seen a near doubling of FOIA demands over a *two-year* period, when it previously took *eight* years for the number of requests to double. Congress surely could not have anticipated such a dramatic acceleration of the number of requests for information made of OIP.[1]

Plaintiff's efforts to downplay the sudden increase in requests are unpersuasive. Plaintiff, for instance, maintains that the last two years reflect no more than "the clear and predictable upward trend" over the last decade. Pl.'s Opp'n at 5. But, as the above numbers bear out, while the number of FOIA requests steadily increased from 2008 to 2016, the increases in the last two years have far exceeded what OIP experienced during that earlier period. Plaintiff also argues that the agency should have anticipated the increase due to the presidential election cycle in 2016 and the subsequent transition period. *See id.* at 6. Yet, as Brinkmann points out, the increases seen during the last election/transition cycle far exceed increases seen in past such cycles. *See* Brinkmann Decl. at 6, n.5 (noting a "2.5x" increase in demands over the prior transition period); *see also* Pl.'s Opp'n at 6. Finally, Plaintiff insists that the recent surge in requests is not "vastly in excess of that anticipated by Congress," because Congress has increased the agency's funding in the last three fiscal years. *See id.* at 7 (quoting *Open America*, 547 F.2d at 616). Congress,

---

[1] Additionally, OIP points to the increase in FOIA-related litigation and complexity of the FOIA requests it receives as dramatic changes from the previous status quo. OIP asserts that it did not track litigation statistics until March 2016, *see* Brinkmann Decl. at 8, n. 8, but it logs an increase from 29 cases in FY 2016 to 80 in FY 2018, as of the filing of Defendant's Motion for Stay, *see id.* at 8.

8

however, can increase an agency's appropriations for any number of reasons that have nothing to do with FOIA. A general increase in appropriations for the Department of Justice thus tells the court nothing about what Congress actually foresaw as to the future rate of FOIA requests.

For the reasons discussed, the court finds that, over the last two fiscal years, OIP has faced a substantial increase in FOIA requests that Congress could not have reasonably anticipated. Thus, this aspect of the "exceptional circumstances" standard is satisfied here. *See Nat'l Sec. Archive v. U.S. S.E.C.*, 770 F. Supp. 2d 6, 9 (D.D.C. 2011) (finding an increase in FOIA requests of over 300% over a 7-year period constituted "exceptional circumstances").

### B. Due Diligence

The parties also contest whether OIP has acted with due diligence both as to the increased number of FOIA requests generally, as well as Plaintiff's specific request. The court finds that OPI has acted with sufficient diligence.

Brinkmann describes what steps OIP has taken to address the recent rise in such requests. According to Brinkmann, in FY 2016, OIP "undertook a comprehensive review of . . . Staff structure and procedures to identify opportunities to create additional efficiencies," which resulted in reorganization of staff and the request-processing structure. Brinkmann Decl. ¶ 20. For instance, OIP reorganized its staff to create a dedicated team to handle less time-consuming matters such as new requests, search initiation, requester negotiations, and "simple track" requests (as opposed to "complex" or "expedited" track requests). *See id.* The reorganization resulted in improved processing time for "simple track" requests. *See id.* ¶ 21. Correspondingly, "complex" and "expedited" track processing times likewise improved because staff assigned to such requests could concentrate solely on those types of cases. *See id.* ¶ 22 & n. 13. Brinkmann concedes that OIP has "not been able to substantially increase staffing levels, or even to backfill all existing open

9

positions, due to budgetary constraints." *Id.* ¶ 23. Yet, OIP has responded by reassigning other OIP staff to FOIA processing on an ad hoc basis, and it has made modest staff additions to the FOIA team. *Id.*

Plaintiff and amici are dismissive of these efforts, complaining primarily that "the agency is not seeking additional funding for FOIA processing . . ." Pl.'s Opp'n at 12; *see also* Mem. of Amici Curiae in Support of Pl.'s Opp'n, ECF No. 16 [hereinafter Amici Curiae Br.], at 24. They point out that the Department of Justice, for instance, has requested *less* total funding from Congress for FY 2018 and FY 2019, and that it has sought to reduce the number of employees funded through the agency's general appropriations, under which OIP operates. *See* Pl.'s Opp'n at 13–14. These are fair criticisms. Yet, as a general matter, it is not the role of the judiciary to question how executive agencies request and allocate resources, absent some compelling evidence of purposeful conduct. *See Edmond v. U.S. Atty.*, 959 F. Supp. 1, 3 n.2 (D.D.C. 1997) (noting, in response to plaintiff's argument that "[d]efendants failed to exercise due diligence, in part, as a result of their alleged poor planning and management," that the "[c]ourt [was] not prepared . . . to second-guess decisions by the executive and legislative branches on administrative support and funding for the processing of FOIA requests in the absence of some evidence that the cooperative branches sought to circumvent the law"). Here, neither Plaintiff nor amici point to any such evasive conduct by the Department of Justice. *Cf.* Amici Curiae Br. at 16 (observing that some agencies, though not naming the Department of Justice, are decreasing "proactive disclosures," such as officials' schedules and public remarks). The court simply is not in a position, at this point, to fairly judge whether the agency's budgetary decision-making reflects an indifference to its FOIA obligations or is attributable to other political factors to which the court is not privy.

With regard to Plaintiff's individual FOIA request, OIP employs a multi-track first-in, first-out process, which now applies to even those cases in litigation. (Previously, OIP had bumped litigated requests to the front of the line.) *See* Def.'s Mot. at 8–9. Plaintiff's request was placed on the "complex" track when received. *Id.* at 2. OIP sent a search notification to the Office of Legal Policy, the office responsible for handling the necessary search, and thereafter, with the Office of Legal Policy, created "a comprehensive search plan" to address Plaintiff's request. Brinkmann Decl. ¶ 41.

While the steps taken as to Plaintiff's specific FOIA request are quite limited in scope, Defendant's efforts pass muster in the face of the current circumstances. *See Nat'l Sec. Archive*, 770 F. Supp. 2d at 9 (finding that where defendant had "implement[ed] the FIFO system" and "new technology to streamline and expedite the processing of FOIA requests," as well as "made agency records available on the SEC's public website," it had shown sufficient evidence of due diligence); *see also Ctr. for Pub.*, 2006 WL 1073066 at *4 (finding that the defendant was "acting in good faith and exercising due diligence" where it "processe[d] requests on a first-in, first-out basis, with two tracks-simple/fast and routine/complex."). It is true, as Plaintiff points out, that Defendant has not made any interim productions, a feature of several cases granting stays. Pl.'s Opp'n at 12. But Plaintiff cites to no case that makes interim productions a necessary condition to a finding of due diligence. Nor is Plaintiff entitled to preferential treatment of its request merely because it has filed suit. *See Open America*, 547 F.2d at 615 ("We believe that Congress intended to guarantee access to Government agency documents on an equal and fair basis."). OIP, in this case, has taken the steps necessary to proceed immediately with search and production efforts upon expiration of the stay. Under the present circumstances, those steps are sufficient to establish the agency's diligence under *Open America*.

### C. Reasonable Efforts to Reduce Backlog

As noted, because the court finds that "extraordinary circumstances" exist to warrant a stay, the court need not determine whether OIP has undertaken reasonable efforts to reduce its backlog. That said, the court is concerned that the growth in OIP's backlog has outpaced the growth in the number of requests received for the last two years. From FY 2016 to FY 2017, OIP saw a more than 56% increase in FOIA requests, but its backlog grew over 109% during the same period. *See* Brinkmann Decl. ¶ 16. Likewise, from FY 2017 to FY 2018, OIP is on pace to see an over 20% increase in FOIA requests, yet the backlog is expected to grow by over 41% during the same period. *Id.* OIP's backlog is outpacing the increase in requests it receives by double, creating a trend that, unless reversed, will stifle the purpose and efficacy of FOIA. This is cause for real concern. Unless Defendant's efforts and resource allocation to its responsibilities under FOIA improve in the near future, this court will view less favorably any future stay request. *Cf. Ctr. for Pub. Integrity*, 2006 WL 1073066, at *5, n.6. The court urges other judges in this District to do the same.

### IV. CONCLUSION AND ORDER

For the reasons stated above, the court finds that Defendant has demonstrated "exceptional circumstances," and further that Defendant has responded with due diligence to the recent spike in FOIA requests, as well as to Plaintiff's specific request. These proceedings shall be stayed until January 13, 2019, and this court will retain jurisdiction over this matter.

Upon expiration of the stay, the court will not accept from Defendant an extended schedule to search for and produce responsive records. Ten months have already passed since Plaintiff made its request, which it then narrowed. It would behoove Defendant to take the next six weeks

to craft and execute a plan to expeditiously produce the requested records upon expiration of this stay.

The parties shall file a Joint Status Report on February 13, 2019, that updates the court on Defendant's search and processing efforts.

Dated: December 7, 2018

_____
Amit P. Mehta
United States District Judge